# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| CARILYN BALDUCCI, | ) | |
| PLAINTIFF, | ) | |
| v. | ) | Case No. Pending |
| MISSOURI DEPARTMENT OF CORRECTIONS, | ) | JURY TRIAL DEMANDED |
| RYAN BROWNLOW, | ) | |
| JOHN OR JANE DOE #1, | ) | |
| and, | ) | |
| JOHN OR JANE DOE #2, | ) | |
| DEFENDANTS. | ) | |

## COMPLAINT

Plaintiff, by and through his attorneys, and for his Complaint, hereinafter states and alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff's deceased son was brutally assaulted by inmate Akwasi Sawyer while confined at the Western Reception Diagnostic Correctional Center. Defendants were on notice that there was a reasonable inference of a substantial threat of violence against the Plaintiff. Defendants failed to take any action that would reasonably prevent the substantial threat of violence from occurring to any inmate, including Plaintiff's son. As a result of the assault, Plaintiff suffered a traumatic brain injury that directly caused his death three weeks later.

2. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, seeking compensatory damages and punitive damages against all Defendants for violations to her son's constitutional

rights while acting under color of law, together with reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

3. Plaintiff asserts supplemental Missouri state law claims against all Defendants for their negligent acts under Missouri law.

## JURISDICTION AND VENUE

4. Jurisdiction of the Court is properly invoked pursuant to 28 U.S.C. §§ 1131 and 1343(a)(3) and (4) and the aforementioned statutory provisions.

5. This Court has supplemental jurisdiction over claims which arise under Missouri law.

6. Plaintiff's claim for attorney's fees and costs is authorized by 42 U.S.C. § 1988.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2). All actions alleged herein occurred in the Western District of Missouri.

## PARTIES

8. Plaintiff, Carilyn Balducci (hereinafter "Plaintiff"), was at all times relevant the natural mother of Christopher Balducci (hereinafter "Christopher").

9. At all times relevant, Christopher was an inmate at the Western Reception Diagnostic Correctional Center, a prison facility of the State of Missouri Department of Corrections.

10. Defendant Missouri Department of Corrections (hereinafter "MODOC") is organized and existing under the laws of the State of Missouri and, at all times, was responsible for the operation of the Western Reception Diagnostic Correctional Center; the hiring, supervision, training, activities, and conduct of their personnel; and for the welfare of all the

inmates of that facility. Defendant may be served at Missouri Department of Corrections, 2729 Plaza Drive, P.O. Box 236, Jefferson City, Missouri 65102.

11. At the time of the incident, Christopher was incarcerated at the Western Reception Diagnostic Correctional Center (hereinafter "WRDCC"), a facility maintained, staffed, controlled, and operated by Defendant MODOC, located at 3401 Faraon Street, St. Joseph, Missouri 64506.

12. Defendant, Ryan Brownlow (hereinafter "Brownlow") was the Warden in charge of the Western Reception Diagnostic Correctional Center at the time of Plaintiff's injury and is a resident of the state of Missouri. Defendant Brownlow is being sued in his individual capacity. Defendant may be served at the Western Reception Diagnostic Correctional Center, 3401 Faraon Street, St. Joseph, Missouri 64506.

13. Defendant, John Or Jane Doe #1 (hereinafter "John Doe #1"), was the correctional officer in charge of monitoring Christopher and Christopher's cell on the night of the incident and is a resident of the state of Missouri. Defendant John Doe #1 is being sued in his/her individual capacity. Defendant may be served at the Western Reception Diagnostic Correctional Center, 3401 Faraon Street, St. Joseph, Missouri 64506.

14. Defendant, John Or Jane Doe #2 (hereinafter "John Doe #2"), was the supervisor of John Doe #1 on the night of the incident and is a resident of the state of Missouri. Defendant John Doe #2 is being sued in his/her individual capacity. Defendant may be served at the Western Reception Diagnostic Correctional Center, 3401 Faraon Street, St. Joseph, Missouri 64506.

15. At all times mentioned herein, Defendants, individually and through their agents, servants, and employees, were acting within the scope and course of their agency and

employment. As such, the aforementioned Defendants are vicariously and individually liable for the tortious conduct of its employees, servants, and agents, including but not limited to Defendants Ryan Brownlow, John Or Jane Doe #1, and John Or Jane Doe #2.

**FACTS**

16. On or about February 25, 2020, Plaintiff was sentenced to the Missouri Department of Corrections for 4 years for the offense of resisting arrest that was to run concurrently with his three previous convictions.

17. At some point during his sentence, Plaintiff was placed at WRDCC in St. Joseph, Missouri.

18. In the week leading up to events relevant to this claim, an inmate that was also held at the WRDCC, Akwasi Sawyer (hereinafter "Sawyer"), assaulted another inmate at the WRDCC.

19. Following this assault, Sawyer was not placed into maximum security and did not face any repercussions for his actions.

20. On or about October 10, 2020, Plaintiff's son Christopher was placed into the #6 house on the first floor of the WRDCC.

21. At some point during October 10, 2020, Christopher and Sawyer, who were not cell mates, were permitted to be together and unsupervised.

22. On or about October 10, 2020, Sawyer brutally attacked Christopher, leaving him unresponsive.

23. During the assault, Sawyer also assaulted three correctional officers for the WRDCC who were trying to stop the attack on Christopher.

24. Following the assault, Christopher was transported to Mosaic Life Care in St. Joseph, Missouri and subsequently transport to the University of Kansas Hospital in Kansas City, Kansas.

25. Plaintiff was not contacted by Defendant Warden Brownlow until two days after the vicious assault of her son.

26. On or about October 21, 2020, Christopher was medically paroled and the state-appointed Corizon Healthcare removed medical coverage.

27. After weeks of suffering, Christopher succumbed to his injuries on November 2, 2020.

28. Following Christopher's death, an autopsy was performed by the Forensic Medical of Wyandotte County.

29. Christopher's certificate of death, which was completed by the Kansas Department of Health and Environment- Office of Vital Statistics, notes the causes of death as: (a) pulmonary thromboembolism, (b) blunt force trauma, (c) assault.

30. At the time of the attack, Defendants had a system of policies and rules that were intended to have checks of all inmates to ensure that there would never be enough time that an inmate would be alone to allow for someone to be assaulted to the point of death.

31. As a direct proximate result of the negligence, carelessness, and deliberate indifference of Defendants, Plaintiff's son was caused to suffer severe and painful injures that ultimately led to his untimely death.

# SECTION 1983 CLAIM

## COUNT I: DEFENDANTS' FAILURE TO PROPERLY TRAIN, SUPERVISE, AND/OR DISCIPLINE CORRECTIONAL STAFF VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS- *FARMER* CLAIM

32. Defendants, individually and through their agents, servants, and employees acting under color of law, had a duty to Plaintiff to ensure his Constitutional rights were not violated, including his Eighth Amendment right to not suffer cruel and unusual punishment and his Fourteenth Amendment right requiring equal protection.

33. Christopher, as a prisoner of the Defendant MDOC, had an Eighth Amendment right to be protected from harm by fellow prisoners.

34. Christopher's murderer, Akwasi Sawyer, just days before the attack had assaulted another prisoner.

35. Defendants were put on notice from that assault that Sawyer was a dangerous individual who was not deterred from attacking anyone at the WRDCC.

36. Defendants and their agents did not take any protective action following Sawyer's previous attack to prevent him from assaulting someone just a week later.

37. Defendants and their agents were made aware that there was a substantial risk to the safety of each prisoner at the WRDCC by Sawyer, including Plaintiff's son, due to his violent history.

38. Defendants and their agents' failure to take any correctional action following Sawyer's previous attack is deliberate indifference that directly led to the murder of Plaintiff's son.

39. Defendants' deliberate indifference to Christopher allowed for the assault to occur and not be stopped until Christopher had already suffered life-ending injuries.

40. The lack of corrective action prior to Christopher's murder is a failure on the part of the Defendants to act reasonably to prevent or stop the assault of Plaintiff's son and posed a substantial harm to everyone at the WRDCC.

41. Therefore, as a direct and proximate result of Defendants' deliberate indifference to a substantial harm, Plaintiff's son was deprived of his Constitutional rights and was caused to suffer severe and permanent injuries.

## MISSOURI STATE LAW CLAIMS
## COUNT II: NEGLIGENCE

42. Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 41 above as fully set forth herein.

43. At all times relevant, Defendants and their agents, servants, and employees were acting under the color of Missouri law.

44. Defendants owed a reasonable standard of care toward Plaintiff's son as he was an inmate of Defendant MODOC and under the supervision of Defendants Brownlow, Doe #1, and Doe #2.

45. Defendants and their agents, servants, and employees were negligent, and their act of negligence caused Plaintiff to suffer severe and permanent injuries in the following particulars:

   a. Defendant's negligently failed to take corrective actions to prevent Sawyer, who had assaulted someone less than a week before the murder, from attacking anyone else;

   b. Defendants negligently failed to supervise Sawyer to ensure that he did not assault anyone else;

c. Defendants negligently failed to follow their ministerial duties regarding timed checks of inmates and not allowing inmates to be left alone;

d. Defendants negligently failed to follow their ministerial duty regarding placing violent inmates in solitary confinement following the assault of another inmate;

e. Defendants negligently failed to follow their ministerial duty regarding constant supervision on inmates, specifically violent inmates;

f. Defendants negligently failed to create and follow policies and/or customs to ensure that inmates, especially violent inmates, were not left unsupervised for extended periods of time;

g. Defendants negligently failed to create and follow policies and/or customs to ensure that inmates who assault other inmates are not permitted to be left alone with inmates for extended periods of time;

h. Defendants negligently failed to create and follow policies and/or customs to ensure that video surveillance was used to allow for constant supervision of inmates in the case of emergencies; and,

i. Defendants negligently failed to respond to an on-going assault in a way that ensured.

46. Official immunity does not operate to shield public officers from civil liability for injuries arising out of their negligent performance of merely ministerial acts and functions in the exercise of their official duties. *Harris v. Munoz*, 43 S.W.3d 384, 387 (Mo.App. W.D. 2001).

47. In these particulars, the negligence of Defendants resulted from deliberate indifference and failure to perform ministerial duties which directly led to the death of Plaintiff's son.

## JURY DEMAND

48. Plaintiff hereby demands a trial by jury of all issues in this matter.

## RELIEF

WHEREFORE, Plaintiff prays for a Judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial, punitive damages against all Defendants in an amount to be determined at trial, attorney's fees, costs, and disbursements pursuant to law, and such other and further relief as this Court deems just and proper.

Respectfully Submitted,

By: */s/ Ron Netemeyer*
**RON NETEMEYER, #49409**
**JILL HARPER, #65892**
Harper, Evans, Wade & Netemeyer
401 Locust St. – Ste. 401
Columbia, MO 65201
Phone: (573) 442-1660
Fax: (573) 874-8961
Email: rnetemeyer@lawmissouri.com
Email: jharper@lawmissouri.com
*Attorneys for Plaintiff*