# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| CARILYN BALDUCCI, | ) | |
| Plaintiffs | ) ) ) | |
| v. | ) ) | Case No. 2:21-cv-04022-NKL |
| MISSOURI DEPARTMENT OF CORRECTIONS, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

Defendants Missouri Department of Corrections ("MDOC"), Warden Ryan Brownlow, Curtis Gregory, and Jason Faulkner move to dismiss the Second Amended Complaint by plaintiff Carilyn Balducci for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Docs. 50, 53, 56. For the reasons discussed below, the motion to dismiss by MDOC, Brownlow, and Gregory are granted. The motion to dismiss by Faulkner is denied.

**I.     Alleged Facts[1]**

On February 25, 2020, the plaintiff's son, Christopher Balducci, was sentenced to 4 years in prison for resisting arrest. He thereafter became an inmate at the Western Reception Diagnostic Correctional Center ("WRDCC"), a prison facility maintained, staffed, controlled, and operated by Defendant MDOC. Brownlow was the Warden of the facility. Faulkner was the correctional officer in charge of monitoring Christopher and his fellow inmates on the relevant night. Gregory

---

[1] The Court accepts the facts alleged in the Second Amended Complaint (Doc. 45) as true for the purpose of deciding the motion to dismiss.

was Faulkner's supervisor on that night.

On or about October 10, 2020, Christopher was placed into the #6 house on the first floor of the WRDCC. At some point that day, Christopher and another inmate, Akwasi Sawyer, were permitted to be together, without supervision, although they were not cellmates.

Just the prior week, Sawyer had assaulted another inmate at WRDCC. Brownlow and other officers, including Gregory and Faulkner, were aware of Sawyer's history of violent assaults and refusal to follow WRDCC procedures. Nonetheless, Sawyer was not placed into maximum security, and he faced no repercussions for his actions.

At the time, Defendants' policies or rules required checks of all inmates "to ensure that there would never be enough time that an inmate would be alone to allow for someone to be assaulted to the point of death."

On October 10, 2020, Sawyer attacked Christopher, leaving him unresponsive. Sawyer also assaulted three correctional officers who tried to stop the attack.

Christopher was transported to Mosaic Life Care in St. Joseph, Missouri, and then to the University of Kansas Hospital in Kansas City, Kansas.

On November 2, 2020, Christopher died. The forensic medical examiner of Wyandotte County performed an autopsy. The certificate of death, completed by the Kansas Department of Health and Environment – Office of Vital Statistics, notes the causes of death as (a) pulmonary thromboembolism, (b) blunt force trauma, and (c) assault.

## II. Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). A claim is "plausible on its face"

2

Case 2:21-cv-04022-NKL   Document 64   Filed 09/15/21   Page 2 of 19

when the allegations allow the court to draw the reasonable inference that the defendants are liable for the misconduct alleged. *Id.* There must be more than "a sheer possibility" that the defendants acted unlawfully. *Id*. (citation omitted).

### III. Discussion

#### A. Whether Sovereign Immunity Bars the State Law Claim Against MDOC

MDOC argues that Plaintiff's state law claims against it are barred by the doctrine of sovereign immunity.

"In Missouri, sovereign immunity is the rule rather than the exception." *Div. of Emp. Sec., Missouri v. Bd. of Police Commissioners*, 864 F.3d 974, 980 (8th Cir. 2017). "[S]tatutory provisions waiving sovereign immunity must be strictly construed." *Richardson v. State Hwy & Transp. Com'n*, 863 S.W.2d 876, 880 (Mo. banc 1993). Plaintiffs must "plead facts sufficient to allege a waiver of sovereign immunity . . . ." *Brennan By & Through Brennan v. Curators of the Univ. of Missouri*, 942 S.W.2d 432, 437 (Mo. Ct. App. 1997); *see also Newsome v. Kansas City, Mo. Sch. Dist.*, 520 S.W.3d 769, 776 (Mo. banc 2017) (noting in addressing motion for summary judgment that "[s]overeign immunity is not an affirmative defense but is part of the plaintiff's prima facie case"); *Hinesley v. City of Lake Ozark, Mo.*, No. 08-04294-NKL, 2010 WL 3613996, at *15 (W.D. Mo. Sept. 8, 2010) (finding that "bare conclusory allegation" that defendant had waived right to assert sovereign immunity by obtaining liability insurance was insufficient to state a claim under Missouri law).

Plaintiff argues that the "dangerous property condition" exception strips MDOC of sovereign immunity. That exception requires a plaintiff to plead facts showing:

1) a dangerous condition of the property;

2) that the plaintiff's injuries directly resulted from the dangerous condition;

> 3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind the plaintiff incurred; and
>
> 4) that a public employee negligently created the condition or that the public entity had actual or constructive notice of the dangerous condition.

*State v. Godfrey*, 883 S.W.2d 550, 552 (Mo. Ct. App. 1994) (citing Mo. Rev. Stat. § 537.600.1(2)). "The term 'dangerous condition' has a narrow meaning and refers exclusively to defects in the physical condition of the public entity's property." *Godfrey*, 883 S.W.2d at 552.

As Plaintiff notes, "faulty maintenance of screens, locks, and doors" may be sufficient to satisfy the dangerous-condition element. *Id.* However, Plaintiff has not alleged any such physical defects in the WRDCC. Although Plaintiff alleges that Christopher and Sawyer "were permitted to be together and unsupervised" despite not being cellmates, there is no allegation that this was because of faulty locks or doors or other deficient physical devices or structures. *Cf. id.* ("[T]he factual allegations in the amended petition do aver defects of faulty maintenance of the screens, locks and doors."). Here, the allegations suggest only "that inadequate supervision by the state created a dangerous condition; . . . that the dangers . . . did not involve the physical condition of the state's property but rather the criminal acts of others." *Alexander v. State*, 756 S.W.2d 539, 542 (Mo. 1988). The allegations therefore are not sufficient to invoke the dangerous-condition exception to sovereign immunity. Accordingly, the Court must conclude that, upon the facts alleged, MDOC is entitled to sovereign immunity.

**B. Whether Plaintiff Fails To State a Wrongful Death Claim**

Defendants' next argument is that their conduct as alleged did not result in Christopher's death. Defendants note that Christopher's death certificate lists "pulmonary thromboembolism" as one of the three causes of Christopher's death (with the other two causes listed as "blunt force trauma" and "assault"). Defendants argue that, while "[t]rauma is an unusual, but well

documented, cause of pulmonary embolism within about a week of the trauma," the allegation that Christopher died *three* weeks after the trauma means that Defendants' alleged conduct did not lead to Christopher's death.

As a preliminary matter, for a wrongful death claim, a plaintiff need only plead conduct that causes or *contributes to cause* a death. *See, e.g., Sundermeyer v. SSM Reg'l Health Servs.*, 271 S.W.3d 552, 556 (Mo. 2008) (holding that evidence that "conduct contributed to cause Mother's death" was sufficient to permit plaintiff to withstand summary judgment motion). Defendants' argument thus applies too restrictive a legal standard.

Second, on the facts alleged—particularly the allegation that the death certificate listed the causes of death as not just pulmonary thromboembolism, but also "blunt force trauma" and "assault"—Defendant's argument that their conduct could not have caused Christopher's death as a legal matter is meritless. Indeed, Defendants have not even attempted to suggest that the blunt force trauma and assault listed on the death certificate were unrelated to Sawyer's attack.

Furthermore, a motion to dismiss for failure to state a claim should be limited to the pleadings. *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 799–800 (8th Cir. 2011) ("Consideration on a motion under Rule 12(b)(6) is limited to initial pleadings, and if the court considers matters outside the pleadings, the motion must be treated as one for summary judgment under Rule 56."). Here, not only do Defendants introduce matters outside of the pleadings, but they also seek to "'shortcut the discovery process and reach the substantive factual issue at the heart of this case.'" *See SI03, Inc. v. Musclegen Rsch., Inc.*, No. 16-CV-274, 2020 WL 2468412, at *3 (E.D. Mo. May 13, 2020) (quoting *Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, No. 08-CV-243, 2008 WL 2064967, at *2 (E.D. Mo. May 14, 2008)); *see also Postawko v. Missouri Dep't of Corr.*, No. 16-4219-NKL, 2017 WL 1968317, at *9 (W.D. Mo. May 11, 2017) (noting that whether medical

care that plaintiffs received was legally adequate was "a merits issue and[,] accordingly, a determination more appropriate for summary judgment or trial, not a motion to dismiss"). Defendants' argument concerning the cause of Christopher's death is not appropriate for a motion concerning the sufficiency of the pleadings.

### C. Whether Official Immunity Bars the State Law Claims Against Brownlow, Faulkner, or Gregory

Defendants argue that Missouri's official immunity doctrine bars Plaintiff's state law claims against them. The official immunity doctrine shields negligent acts that a public official performs in the course of his official duties, so long as the duties are discretionary and not ministerial in nature. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008), *as modified on denial of reh'g* (Sept. 30, 2008). The distinction between ministerial and discretionary acts "depends on the 'degree of reason and judgment required' to perform the act." *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. 2006) (citation omitted). "An act is discretionary when it requires the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *Id*. (quotation marks and citation omitted). In contrast, "a ministerial function is [one] of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id. (quotation marks and citation omitted)*.

Whether an act is discretionary or ministerial turns on:

(1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity.

6

*Southers*, 263 S.W.3d at 610. "[T]he party asserting the affirmative defense of official immunity . . . [bears] the burden of pleading and proving that they are entitled to that defense." *Nguyen v. Grain Valley R-5 Sch. Dist.*, 353 S.W.3d 725, 730 (Mo. Ct. App. 2011).

Plaintiff makes the following allegations with respect to the wrongful death claim:

- Defendant[]s negligently failed to take corrective actions to prevent Sawyer, who had assaulted someone less than a week before the murder, from attacking anyone else;
- Defendants negligently failed to supervise Sawyer to ensure that he did not assault anyone else;
- Defendants negligently failed to follow their ministerial duties regarding timed checks of inmates and not allowing inmates to be left alone;
- Defendants negligently failed to follow their ministerial duty regarding placing violent inmates in solitary confinement following the assault of another inmate;
- Defendants negligently failed to follow their ministerial duty regarding constant supervision on inmates, specifically violent inmates;
- Defendants negligently failed to create and follow policies and/or customs to ensure that inmates, especially violent inmates, were not left unsupervised for extended periods of time;
- Defendants negligently failed to create and follow policies and/or customs to ensure that inmates who assault other inmates are not permitted to be left alone with inmates for extended periods of time;
- Defendants negligently failed to create and follow policies and/or customs to ensure that video surveillance was used to allow for constant supervision of inmates in the case of emergencies; and,
- Defendants negligently failed to respond to an on-going assault in a way that ensured [*sic*].

Doc. 45 (Second Amended Complaint), ¶ 53.

The individual defendants' alleged action or inaction with respect to the creation of policies or customs and "fail[ure] to supervise" are discretionary, not ministerial duties. *See Kanagawa v. State By & Through Freeman*, 685 S.W.2d 831, 836–37 (Mo. 1985) (holding that "designing policies and standards for prison security that, when carried out by subordinates, safeguard both inmates and the public from physical harm" "necessarily involve[s] the exercise of a substantial degree of judgment and require[s] consideration of the manifold aspects of prison operation, the nature and physical design of the facility in question and the vagaries of state appropriations" and

is not ministerial); *Davis v. Buchanan Cty. Missouri*, No. 5:17-CV-06058-NKL, 2020 WL 1527164, at *4 (W.D. Mo. Mar. 30, 2020) ("Plaintiffs seek to hold them responsible only insofar as they failed in their duties of training, oversight and policymaking. However, '[t]his type of supervisory conduct and policy making is discretionary and covered by official immunity.'" (citing *Nguyen*, 353 S.W.3d at 733 (finding that allegations relating to "hiring policies, training of employees, and general supervision of employees" is "discretionary"))).

Plaintiff's allegations concerning unspecified "corrective actions" also involve discretionary matters. *See Shivers v. Barnes*, 813 S.W.2d 121, 123 (Mo. Ct. App. 1991) (holding that "recommending a course of discipline following a hearing on a conduct violation report" was a discretionary function).

Plaintiff's allegation that the individual defendants were negligent in failing to respond to the assault as it was underway also concerns a discretionary duty. *See, e.g., Murray v. Leyshock*, 915 F.2d 1196, 1200 (8th Cir. 1990) (holding that officer "faced with [an] attack . . . had to use his discretion in deciding whether to fire . . . and how to fire" and was entitled to official immunity under Missouri law).

Plaintiff also alleges that the defendants negligently failed to comply with duties regarding timed checks of inmates, a prohibition against leaving inmates alone and without video surveillance, and placing violent inmates in solitary confinement following assaults. However, given the allegations that Brownlow "was the Warden in charge of the [WRDCC] at the time of Plaintiff's injury" and Gregory "was the supervisor of Faulkner on the night of the incident," the Court cannot plausibly infer from the facts alleged that Brownlow and Gregory were tasked with such ministerial tasks as conducting timed checks of the inmates, and personally ensuring that inmates were not left alone. As for allegations that Brownlow, Gregory and Faulkner failed to

8

Case 2:21-cv-04022-NKL   Document 64   Filed 09/15/21   Page 8 of 19

place Sawyer in solitary confinement, there are insufficient facts alleged to show they were each authorized to and required to place Sawyer in solitary confinement. Absent specific allegations concerning ministerial duties owed and shirked by each of these defendants, Plaintiff's state law claims against them fail because of the doctrine of official immunity.

As for Faulkner, however, Plaintiff's allegations regarding certain specific duties plausibly show that those duties are ministerial, not discretionary, in nature. Conducting timed checks and not leaving known dangerous inmates unsupervised fall "neatly into the category of actions 'which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.'" *Letterman v. Does*, 859 F.3d 1120, 1126–27 (8th Cir. 2017) (quoting *Southers*, 263 S.W.3d at 610). Tasks of this kind confer no policymaking authority and require no professional judgment. *Letterman*, 859 F.3d at 1126; *see also Kanagawa*, 685 S.W.2d at 836 (noting that "certain functions affecting prison security must be routinely performed and might fairly be described as ministerial" insofar as they "are carried out by security personnel").

There is no suggestion that imposing liability on Faulkner for his alleged personal failure to perform timed checks of inmates or violating a prohibition against leaving inmates unsupervised and unmonitored would have the effect of making officers in a similar position inappropriately cautious. To the contrary, it would merely encourage officials to conduct their ministerial duties with due care.

Thus, although the doctrine of official immunity prevents Plaintiff from proceeding with her wrongful death claims against Brownlow and Gregory, Plaintiff's state law claim against Faulkner for allegedly failing to perform timed checks and personally leaving inmates

unmonitored, all in contravention of duties he allegedly owed, is not barred by official immunity.

### D. Whether the Public Duty Doctrine Bars the State Law Claim Against Faulkner

Under the public duty doctrine, "a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual." *Southers*, 263 S.W.3d at 611. The public duty doctrine does not insulate a public employee from liability "for breach of ministerial duties in which an injured party had a 'special, direct, and distinctive interest.'" *Id.*, 611-12 (citation omitted). "[W]hen injury to a particular, identifiable individual is reasonably foreseeable as a result of a public employee's breach of duty," the public duty doctrine does not apply. *Id.* at 612.

The Court has already concluded that duties regarding timed checks of inmates, and prohibitions against leaving known violent inmates alone without video surveillance, are ministerial. Because the goal of such checks, supervision, and monitoring is to ensure the safety of prisoners and staff, and not the safety of the public in general, they were duties in which Christopher, as an inmate, had a "special, direct, and distinctive interest." *See, e.g., Buchanan Cty.*, 2020 WL 1527164, at *5 (holding that duty to accurately report medical issues was owed to inmate, not the public in general). Therefore, the public duty doctrine does not render Faulkner immune from Plaintiff's wrongful death claim for failure to adequately monitor Sawyer and protect Christopher. *See Tanner v. City of Sullivan*, No. 11-CV-1361 NAB, 2013 WL 121536, at *14 (E.D. Mo. Jan. 9, 2013) (denying immunity under public duty doctrine where plaintiffs "introduced sufficient evidence that a reasonable jury might find that the risk of suicide by Palmer was reasonably foreseeable as a result of," *inter alia*, "the Defendants' failure to follow the policies regarding thorough and systematic searches").

### E. Whether Plaintiff Has Pleaded an Eighth Amendment Violation Against Brownlow, Gregory, or Faulkner

The individual defendants argue that Plaintiff has not alleged sufficient facts to state an Eighth Amendment violation against them. The Court considers the allegations involving Faulkner and the supervisory officers separately.

#### 1. Section 1983 Claim Against Faulkner and Qualified Immunity

Faulkner argues that Plaintiff has not stated a Section 1983 claim against him and that he is entitled to qualified immunity. Because the qualified-immunity analysis requires consideration of whether there is a violation of federal law, the Court considers Defendants' arguments concerning failure to state a claim within the qualified-immunity framework.

Qualified immunity "protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). "Qualified immunity is appropriate where no reasonable fact finder could conclude that the facts when viewed in a light most favorable to the plaintiff show that the officers' conduct violated a clearly established constitutional right." *Davis v. Buchanan County, Missouri,* No. 20-1842, 2021 WL 3729050, at *10 (8th Cir. Aug. 24, 2021) (quotation marks and citation omitted). When a defendant asserts the qualified immunity defense, "the district court should resolve that threshold question before permitting discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *see also Vandevender v. Sass*, 970 F.3d 972, 975 (2020) (rejecting argument that qualified immunity is a fact-dependent affirmative defense that typically requires discovery, noting that "[q]ualified immunity is an immunity from suit, not a mere defense to liability").

To overcome qualified immunity, a plaintiff must allege (a) violation of a constitutional right, and (b) that the right was clearly established at the time. Accordingly, the Court considers

11

first whether Plaintiff has alleged violation of a constitutional right and then whether the right was clearly established.

### a. Violation of a Constitutional Right

The Eighth Amendment's prohibition on "cruel and unusual punishments" requires prison officials to take "reasonable measures to guarantee the safety of the inmates [and] . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994); *see also Robinson v. Cavanaugh*, 20 F.3d 892, 895 (8th Cir. 1994) (noting that inmates "have a constitutional right to be free from attacks by other inmates"). Plaintiff must allege that prison officials "were deliberately indifferent to his constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates." *Id.* "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health, and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

"A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference is akin to criminal recklessness. *Johnson v. Kelley*, No. 519-00242, 2021 WL 800843, at *2 (E.D. Ark. Feb. 9, 2021), *report and recommendation adopted*, No. 519-

00242, 2021 WL 797108 (E.D. Ark. Mar. 2, 2021), *aff'd*, 855 F. App'x 313 (8th Cir. 2021).

Plaintiff's allegations that Faulkner was on notice that Sawyer had attacked another prisoner just the week before and was a dangerous individual, and nonetheless did not take reasonable steps to keep Sawyer from attacking others—allegedly in violation of prison policies—raise the plausible inference that he knew of, and yet unreasonably did nothing to mitigate, a substantial risk of serious harm to inmate safety. *See Farmer*, 511 U.S. at 826 (noting that "a factfinder may conclude that the official knew of a substantial risk from the very fact that it was obvious"); *Walton v. Dawson*, 752 F.3d 1109, 1125 (8th Cir. 2014) (rejecting defendant's argument "that a prison supervisor cannot be liable when one inmate attacks another, despite the supervisor's actual knowledge of the risk, until the attacker has assaulted more than five other inmates," holding that "*Farmer's* subjective standard . . . 'imposes no such requirement'" (quoting *Farmer,* 511 U.S. at 849 n. 10)); ; *Calderon-Ortiz v. LaBoy-Alvarado*, 300 F.3d 60, 64 (1st Cir. 2002) (denying motion to dismiss where "Plaintiffs . . . alleged that defendants failed to adequately classify inmates, separate them according to their safety needs, and supervise them; defendants knew that the failure to take such steps would increase the risk of violence among inmates; despite this knowledge, defendants failed to take steps that would decrease the danger; and this resulted in the sodomy of [one inmate] by other prisoners"); *Mitchell v. Snowden*, No. 208-CV-01658, 2009 WL 1684595, at *4 (E.D. Cal. June 16, 2009) ("[W]hile threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm," allegations of "additional reasons for prison officials to be concerned, such as . . . any history of assailant attacking other inmates . . . may be sufficient to establish prison officials knew of a substantial risk of harm."); *Lane v. Philbin*, No. 13-CV-36, 2017 WL 4228888, at *6 (M.D. Ga. Sept. 22, 2017) (finding that plaintiff had pled substantial risk of harm where complaint alleged,

*inter alia*, that single guard secured the dormitory, the building was known to house mostly gang members, and "inmate-on-inmate violence [wa]s a frequent occurrence"); *cf. Andrews v. Siegel*, 929 F.2d 1326, 1331 (8th Cir. 1991) (holding that where prison officials referred prisoner to prison psychiatrist "because of concerns about homicidal or suicidal tendencies" and relied on psychiatrist's professional judgment that the prisoner did not pose a serious threat to other inmates because of his mental condition, and there was no indication that he had any problems, disputes, or altercations with any other prisoner for seven months in the general population until he argued with victim and stabbed him the next day, they did not violate Eighth Amendment prohibition against cruel and unusual punishment).

The allegation of foreknowledge distinguishes this case, on the pleadings, from cases in which the Eighth Circuit and district courts within it have found as a matter of law that there was no deliberate indifference. *See Patterson v. Kelley*, 902 F.3d 845, 851–52 (8th Cir. 2018) (noting that "a constitutional claim does not lie every time one inmate attacks another" and holding that inmate's "own inability to anticipate the surprise attack and his decision not to report his altercation with [the attacker] the previous afternoon defeat[ed] liability" for alleged constitutional violation); *Schoelch v. Mitchell*, 625 F.3d 1041, 1047-49 (8th Cir. 2010) (holding that prison officials are entitled to qualified immunity when an inmate is attacked by surprise); *Matthews v. Smith*, No. 21-0417, 2021 WL 2639091, at *1 (E.D. Ark. June 11, 2021) (finding that plaintiff had failed to state a claim for deliberate indifference where "there [wa]s no indication Defendant[s] had actual knowledge there was a substantial risk that [another inmate] would harm Plaintiff"), *report and recommendation adopted*, No. 4:21-0417, 2021 WL 2637667 (E.D. Ark. June 25, 2021); *Sanders v. Bolden*, No. 16-CV-00190, 2018 WL 1096455, at *5 (E.D. Ark. Feb. 8, 2018) (holding that prison officials could not be held liable for constitutional violation where inmate was attacked

without warning), *report and recommendation adopted*, No. 16-CV-00190, 2018 WL 1083039 (E.D. Ark. Feb. 27, 2018).

Plaintiff has stated a claim for deliberate indifference under the Eighth Amendment.

### b. Whether the Right Was Clearly Established

"A right is clearly established if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Smith v. City of Minneapolis*, 754 F.3d 541, 546 (8th Cir. 2014) (quotation marks and citation omitted). "Qualified immunity is appropriate where no reasonable fact finder could conclude that the facts when viewed in a light most favorable to the plaintiff show that the officers' conduct violated a clearly established constitutional right." *Buchanan Cty.*, 2021 WL 3729050, at *10 (quotation marks and citation omitted).

Courts are "not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotation marks and citation omitted). Although a case "directly on point" is not required, the issue must be "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

"[T]he defendant bears the burden of proof for th[e] affirmative defense of qualified immunity," but "the plaintiff must demonstrate that the law was clearly established." *Id.* (quotation marks and citation omitted). *Smith*, 754 F. 3d at 546. The plaintiff must "identify either cases of controlling authority in their jurisdiction at the time of the incident or a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Jacobson v. McCormick*, 763 F.3d 914, 918 (8th Cir. 2014) (quotation marks and citation omitted).

Faulkner argues, without any supporting law, that Plaintiff has not alleged a clearly established constitutional violation on his part, noting that Plaintiff concedes that Christopher was not Sawyer's cellmate, and three correctional officers were assaulted while trying to break up the fight.

The allegations that Faulkner knew that Sawyer was violent, that he had assaulted an inmate the prior week, and that nonetheless, he failed to monitor Sawyer to ensure that he would not attack another inmate to whom he had access, state a "clearly established" constitutional violation. *See, e.g.*, *White v. Crane*, 45 F. App'x 552, 552–53 (8th Cir. 2002) (holding that officers who were told by victim that the another inmate was his enemy and should be placed on his enemy alert list but nonetheless refused the victim's request that the would-be-attacker be placed in handcuffs, and who let the victim go by himself to where the would-be-attacker was, were not entitled to qualified immunity); *Walton*, 752 F.3d at 1119 (noting that jail official "did not need to know [the victim] was especially likely to be assaulted by the specific prisoner who eventually committed the assault," but rather, *"*only needed to know (1) the jail cells were not being locked at night, and (2) leaving the cells unlocked overnight was an obvious, substantial risk to inmate safety"); *Spruce v. Sargent*, 149 F.3d 783, 785–86 (8th Cir. 1998) (reversing grant of summary judgment to warden who, evidence showed, might have been deliberately indifferent to sexual violence against prisoner); *see also al-Kidd*, 563 U.S. at 741 (holding that the "clearly established" requirement does not require a case "directly on point").

The fact that Sawyer and Christopher were not placed in the same cell does not warrant dismissal. Indeed, a reasonable juror could find that leaving Sawyer outside a cell and with other inmates in a common area, or otherwise with access to other inmates, would increase the risk of his attacking other inmates. Further, the fact that Sawyer assaulted three prison staff members

after attacking Christopher is arguably irrelevant because qualified immunity analysis focuses on events that occur before the alleged constitutional violation. However, even if it were relevant, it would confirm what allegedly already was known: Sawyer was a dangerous inmate.

Plaintiff is entitled to proceed with her Section 1983 claim against Faulkner.

### 2. Whether Brownlow or Gregory May Be Held Liable for the Actions of Subordinates

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Iqbal*, 556 U.S. at 676. To state a claim for supervisory liability under Section 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.*

Supervisory liability under Section 1983 requires "notice of a pattern of unconstitutional acts by his subordinates . . . ." *Norman v. Schuetzle*, 585 F.3d 1097, 1104 (8th Cir. 2009). This is a "rigorous standard." *Davis*, 2021 WL 3729050 at *11. The pattern must be "sufficiently egregious in nature" and a "single incident, or a series of isolated incidents, is usually insufficient to infer a pattern." *Id.*

Here, although Plaintiff has alleged that Brownlow and Gregory had notice of Sawyer's dangerousness, she has not alleged that either of the supervisory defendants had notice of a pattern of unconstitutional acts by Faulkner or any other subordinate in a similar situation. *See Buchanan Cty.*, 2021 WL 3729050, at *12 (holding that two prior lawsuits in which plaintiffs alleged failure to provide prescribed medication did not "meet the rigorous standard for putting supervisors on notice of a pattern of constitutional violations"); *Voss v. Hodge*, No. 4:20-CV-00812-JM-PSH, 2020 WL 5539296, at *2 (E.D. Ark. Aug. 27, 2020), *report and recommendation adopted*, No. 20-CV-00812, 2020 WL 5535714 (E.D. Ark. Sept. 15, 2020) (finding that plaintiff "fail[ed] to state a failure-to-take-corrective-action claim" because he "d[id] not claim that he was injured as a result

of [defendant]'s deliberate indifference to a pattern of unconstitutional acts of his subordinates"). Plaintiff therefore has failed to state a claim for supervisory liability under Section 1983.

With respect to policymaking, Plaintiff also fails to state a claim against the defendants. Plaintiff has alleged that Brownlow and Gregory "failed to create and follow policies and/or customs to ensure" (1) "that inmates, especially violent inmates, were not left unsupervised for extended periods of time"; (2) "that inmates who assault other inmates are not permitted to be left alone with inmates for extended periods of time"; and (3) "that video surveillance was used to allow for constant supervision of inmates in the case of emergencies . . . ." Without allegations to suggest that Brownlow or Gregory was aware of deficiencies in their policies or customs with respect to these issues, however, these allegations do not suffice to state a constitutional claim. *See Moyle v. Anderson*, 571 F.3d 814, 819 (8th Cir. 2009) (finding no evidence that county had notice of alleged inadequacy in policy or that "policy's alleged inadequacy was so patently obvious that the county should have known that a constitutional violation was inevitable" where "[t]here was no evidence that the county had had any prior incidents of violence in the AIU due to the misclassification of inmates, which would have placed the county on notice of deficiencies in its booking policy").

IV. Conclusion

For the reasons discussed above, the motions by MDOC, Brownlow, and Gregory to dismiss the Second Amended Complaint for failure to state a claim (Docs. 50 and 53) are

GRANTED. The motion by Faulkner to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted (Doc. 56) is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: September 15, 2021
Jefferson City, Missouri