IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| CARILYN BALDUCCI, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 21-CV-04022-WJE ) |
| MISSOURI DEPARTMENT OF CORRECTIONS, *et al.*, | ) ) ) ) |
| Defendants. | ) |

## **ORDER**

Pending before the Court are Defendants Nathan Woodruff's and Jason Faulkner's Motions for Summary Judgment ("Motions"), and suggestions in support thereof. (Docs. 94, 95, 96). Plaintiff Carilyn Balducci has filed suggestions in opposition (Docs. 97, 98), to which Defendants have timely replied (Docs. 100, 101). The issues are now ripe for consideration. For the reasons that follow, the Motions shall be granted.

### I. Background

This case arises from the death of Mr. Christopher Balducci, who was attacked by a fellow inmate at Western Reception Diagnostic Correctional Center ("WRDCC") operated by the Missouri Department of Corrections, where Defendants served as corrections officers. (Doc. 78, ¶¶ 1, 10, 11). On October 10, 2020, Mr. Balducci was placed on the second floor of House One with Mr. Akwasi Sawyer, an inmate allegedly previously involved in an altercation. (Doc. 97-1, pp. 1-3; Doc. 98-1, pp. 1-4). Defendant Woodruff was assigned to monitor the second floor when another corrections officer asked him to take her post on the fourth and fifth floors so she could take a break. (Doc. 97-1, p. 2; Doc. 97-3, pp. 4-5). Defendant Woodruff monitored the upper floors,

leaving the second-floor responsibilities to Defendant Faulkner. (Doc. 97-1, pp. 2-3; Doc. 97-3, p. 6). Mr. Sawyer then attacked Mr. Balducci and three corrections officers who tried to intervene. (Doc. 78, ¶¶ 20, 26). Mr. Balducci was unresponsive after the attack and later died from his injuries on November 2, 2020. (*Id.*, ¶¶ 20, 30).[1]

On February 3, 2021, Plaintiff filed suit alleging a violation of her son's constitutional rights pursuant to Section 1983 in Count I and wrongful death in Count II. (Doc. 78, ¶¶ 1, 35-65). On September 15, 2021, U.S. District Judge Nanette K. Laughrey entered an order granting the motion to dismiss the second amended complaint against Missouri Department of Corrections, Ryan Brownlow, and Curtis Gregory, but denying the motion to dismiss the second amended complaint against Defendant Faulkner. (Doc. 64). Plaintiff subsequently filed a third amended complaint against Defendants Faulkner and Woodruff on November 18, 2021. (Doc. 78). Defendants then filed the instant Motions on May 20, 2022. (Docs. 94, 96).[2]

## II. Standard of Review

"Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Green Plains Otter Tail, LLC v. Pro-Env't., Inc.*, 953 F.3d 541, 545 (8th Cir. 2020) (citing Fed. R. Civ. P. 56(c)). "A court considering a motion for summary judgment must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Dryer v. NFL*, 814 F.3d 938, 941-42 (8th Cir. 2016) (citing *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996)). "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a

---
[1] Mr. Sawyer pleaded guilty to involuntary manslaughter on February 28, 2022. (Doc. 97-1, p. 3).
[2] On January 10, 2022, in accordance with the provisions of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties in this case waived their right to proceed before a United States District Judge and voluntarily consented to have a United States Magistrate Judge conduct any and all further proceedings in the case. (Doc. 87).

genuine issue for trial." *Id.* at 942 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Green Plains Otter Tail, LLC*, 953 F.3d at 545 (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)).

### III. Analysis

#### A. Defendants are entitled to qualified immunity.

Defendants argue that they are entitled to qualified immunity because Mr. Sawyer's attack on Mr. Balducci was a surprise. (Doc. 95, pp. 5-8; Doc. 96, pp. 10-15). Plaintiff argues that Defendants are not entitled to qualified immunity because both corrections officers were deliberately indifferent to the substantial risk of harm that Mr. Sawyer posed. (Doc. 97, pp. 3-6; Doc. 98, pp. 3-6).

"Qualified immunity shields government officials performing discretionary functions from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, "[t]o overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Handt v. Lynch*, 681 F.3d 939, 943 (8th Cir. 2012) (quoting *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)).

##### a. Mr. Balducci was not deprived of a constitutional right.

"Prison inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000) (citing *Farmer v. Brennan,* 511 U.S. 825, 833 (1994)). "A prison official violates this right when 'he is deliberately

indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates.'" *Id.* (quoting *Newman v. Holmes*, 122 F.3d 650, 652 (8th Cir. 1997)). Thus, "[a] failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002) (quoting *Curry*, 226 F.3d at 977).

The Eighth Circuit has held that there was a substantial risk of harm to the victim when: (1) the attacker was known to be a volatile, dangerous man from his disciplinary record or previous threats made to the victim; (2) the inmate previously threatened or fought with the victim; or (3) a victim should have been better protected because of known prior threats. *Vandevender*, 970 F.3d at 976 (citing *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007); *Newman*, 122 F.3d at 651; *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998); *Prater v. Dahm*, 89 F.3d 538, 540 (8th Cir. 1996); *Jones v. Wallace*, 641 F. App'x 665, 666 (8th Cir. 2016); *Pagels v. Morrison*, 335 F.3d 736, 739 (8th Cir. 2003)). In addition, if the plaintiff argues that prison officials failed to protect them from a general risk of harm, they must do so by "showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Patterson v. Kelley*, 902 F.3d 845, 852 (8th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842). "[Q]ualified immunity for prison officials is appropriate[, however,] when an Eighth Amendment failure-to-protect claim arises from inmate injuries resulting from a surprise attack by another inmate." *Tucker*, 276 F.3d at 1001 (citations omitted). "As prisons are inherently dangerous environments, '[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety.'" *Vandevender*, 970 F.3d at 976 (quoting *Farmer*, 511 U.S. at 834).

Here, there does not appear to have been a substantial risk of harm to Mr. Balducci. Plaintiff does not allege that Mr. Sawyer had an extensive disciplinary record or made prior threats to Mr. Balducci, which would have indicated that he was a particularly volatile, dangerous man. (*See* Doc. 97-1, pp. 3-4; Doc. 98-1, pp. 4-5). There is no evidence to suggest that Mr. Sawyer harbored any animosity or made threats towards Mr. Balducci. (*See* Doc. 97-1, pp. 3-4; Doc. 98-1, pp. 4-5). There is nothing to indicate the men were even familiar with each other before they were housed together on October 10, 2020. (*See* Doc. 97-1, pp. 3-4; Doc. 98-1, pp. 4-5). It also appears that inmate attacks at WRDCC were not "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Patterson*, 902 F.3d at 852. There is no allegation of previous inmate attacks due to the conditions at WRDCC. (*See* Doc. 97-1, pp. 3-4; Doc. 98-1, pp. 4-5).

Plaintiff alleges that Mr. Sawyer was involved in an altercation a few days prior to the incident, consumed drugs, and had previous drug convictions, which illustrate that he was a volatile, dangerous man. (Doc. 97, p. 4; Doc. 98, p. 4). The Eighth Circuit has held, however, that corrections officers were entitled to qualified immunity even when the attacker was convicted of murder, had a disciplinary history while incarcerated, and sent a memorandum to the warden where he described himself as homicidal. *Curry*, 226 F.3d at 976-79. The Court reasoned that a substantial risk of harm did not exist because there was no evidence that the victim was "a likely target of inmate violence," or that the attacker "harbored any animosity" toward the victim. *Id.* at 978-79. While Mr. Sawyer's attack on Mr. Balducci was tragic, it appears to have been a surprise attack. *See Tucker*, 276 F.3d at 1001.

"Deliberate indifference is the reckless disregard of a known, excessive risk of serious harm to inmate health or safety." *Jackson*, 140 F.3d at 1152 (citing *Farmer*, 511 U.S. at 836-38). "This element of deliberate indifference must be viewed from the [corrections officers']

perspectives at the time in question, not with hindsight's perfect vision." *Id.* (citing *Williams v. Nebraska State Penitentiary*, 57 F.3d 667, 669 (8th Cir. 1995)). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young*, 508 F.3d at 873 (citing *Farmer*, 511 U.S. at 844-45).

Here, even if Mr. Balducci faced a substantial risk from Mr. Sawyer or the conditions at WRDCC, there is no allegation that Defendants were subjectively aware of any of these risks. Defendant Faulkner testified that he did not know Mr. Sawyer before the attack and was not aware of Mr. Sawyer's disciplinary history, although he testified that Mr. Sawyer did not have a history of violence after subsequent research. (Doc. 96-1, pp. 41-42). Defendant Woodruff also did not have any knowledge that Mr. Sawyer was particularly dangerous or violent. (Doc. 95-4, p. 11). Further, even if Defendants' actions violated the staffing requirement and security check policies, as Plaintiff alleges, there is no indication that Defendants were subjectively aware of any risk that would flow from these violations. *Patterson*, 902 F.3d at 852 (holding that general allegations of violence at a facility, without evidence that the prison officials were exposed to the underlying facts that revealed the risk, entitled the officials to qualified immunity). "[I]n the absence of any objective evidence that a risk of harm is imminent . . . a prison official's violation of an internal regulation is [not] a violation of constitutional dimension under the Eighth Amendment." *Falls v. Nesbitt*, 966 F.2d 375, 379 (8th Cir. 1992). Thus, even if this Court concluded that Mr. Balducci faced a substantial risk of harm, the Court does not find that Defendants were deliberately indifferent to any such risk.

When viewing the facts in a light most favorable to Plaintiff, Defendants did not deprive Mr. Balducci of a constitutional right. This Court will not go on to address whether Mr. Balducci's constitutional right was clearly established "[b]ecause an official is entitled to qualified immunity

unless both prongs are satisfied, [so the] analysis will end if either of the two is not met." *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (citation omitted); *see also Vandevender v. Sass*, No. 18-607 (DWF/LIB), 2018 WL 6330417, at *4 (D. Minn. Dec. 4, 2018), aff'd, 970 F.3d 972 (8th Cir. 2020).

### B.  Defendants are entitled to official immunity regarding the wrongful death claim.

Defendants argue that they are entitled to official immunity because they were performing discretionary actions when Mr. Sawyer attacked Mr. Balducci. (Doc. 95, pp. 9-10; Doc. 96, pp. 16-17).  Plaintiff argues that Defendants are not entitled to official immunity because they were performing ministerial duties. (Doc. 97, pp. 6-8; Doc. 98, pp. 8-9).

"[O]fficial immunity 'protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts.'" *Davis v. Buchanan Cnty., Missouri*, 11 F.4th 604, 629 (8th Cir. 2021) (quoting *State ex rel. Helms v. Rathert*, 624 S.W.3d 159, 163 (Mo. 2021) (en banc)). It is broadly applied "to allow public officials to make judgments affecting the public safety and welfare without [t]he fear of personal liability." *Id.* (quoting *Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. 2019) (en banc)). "There is a 'narrow exception to the application of the official immunity doctrine—i.e., when a public officer fails to perform a *ministerial* duty required of him by law, he may be personally liable for the damages caused.'" *Id.* (quoting *Helms*, 624 S.W.3d at 163) (emphasis in original). "A ministerial function is one which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to [the officer's] own judgment or opinion concerning the propriety of the act to be performed." *McLean v. Gordon*, 548 F.3d 613, 617 (8th Cir. 2008) (quoting *Charron v. Thompson*, 939 S.W.2d 885, 886 (Mo. 1996) (en banc)). "An act is discretionary, conversely, where 'there is any room whatsoever for variation in when and how a particular task can be done.'"

*Davis*, 11 F.4th at 629 (quoting *Helms*, 624 S.W.3d at 163). "An act is not ministerial simply because the official was commanded to perform the act." *Id.* at 630.

Here, Defendants were performing discretionary duties. When the incident occurred, Defendant Woodruff took another corrections officer's post on the fourth and fifth floors and Defendant Faulkner temporarily replaced Defendant Woodruff on the second floor. (Doc. 97-3, pp. 4-5). Taking another officer's post is a discretionary action, as there does not appear to be a policy governing this action and the corrections officers used their professional judgment to do so. *See Davis*, 11 F.4th at 629. Post Order 1804 states that "[t]he primary responsibility of the Housing Unit Officer is to ensure the safety and security of staff, offenders and the Institution by closely monitoring offender activities inside the Housing Unit." (Doc. 97, p. 7; Doc. 98, pp. 6-7). To the extent that Post Order 1804 prescribed Defendants' duty at the time of the attack, this duty was still discretionary. The nature of this duty was to supervise the unit; however, "[t]he means of doing so were not prescribed by any department policy or regulation" that Plaintiff submitted. *Miller v. Smith*, 921 S.W.2d 39, 46 (Mo. Ct. App. 1996). Instead, the way in which Defendants were to closely supervise the unit was left to their professional judgment. *See id.* "The general instruction to [supervise inmates] . . . merely describes an objective, while reserving the determination of how to meet that goal to the professional judgment of the individual [corrections] officer." *Id.* Further, at this procedural stage, Plaintiff does not allege facts to support that Defendants failed to perform their ministerial duties, like performing timely checks. Defendants' duty to search Mr. Sawyer's cell or monitor Mr. Sawyer more closely were also discretionary duties. *See A.H. v. St. Louis Cnty., Missouri*, 891 F.3d 721, 729 (8th Cir. 2018) (holding that once the defendant performed her ministerial duty of regularly checking on the inmate, any further

action would be discretionary, shielding her with official immunity). Thus, the Court finds that Defendants are entitled to official immunity at this procedural stage.

## IV. Conclusion

The Motions for Summary Judgment (Docs. 94, 96) are GRANTED as set forth herein.

IT IS, THEREFORE, ORDERED.

Dated this 2nd day of July, 2022, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge